IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-02826-PAB

JUNE SAIZ,

      Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

      Defendant.
_____

**ORDER**
_____

This matter comes before the Court on the Complaint [Docket No. 1] filed by plaintiff June Saiz on October 3, 2019. Plaintiff seeks review of the final decision of the defendant (the "Commissioner") denying her claim for disability benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[1]

**I. BACKGROUND**

On March 3, 2009, plaintiff applied for social security benefits under Titles II and XVI of the Act. R. at 11. Plaintiff alleged a disability onset date of February 19, 2009. *Id.* These claims were denied on May 19, 2011. R. at 8. Specifically, although the ALJ found that plaintiff had a severe mental impairment, the ALJ ultimately concluded that plaintiff was not disabled. R. at 13, 19. On October 8, 2013, Judge R. Brooke Jackson reversed and remanded the ALJ's 2011 decision. R. at 444-45. The court found that

---

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

the ALJ's limitation to "simple" work did not sufficiently account for plaintiff's mental impairments.  R. at 453.  On remand, the ALJ again found that plaintiff was not disabled.  R. at 486.  The Appeals Council reversed.  R. at 496.  Specifically, the Appeals Council determined that "[t]he decision is not responsive to the district court's instructions as they relate to the claimant's mental impairments."  *Id.*  The Appeals Council stated that an RFC "should describe the claimant's mental capacity in terms of work-related *functions*," and cited to Social Security Ruling 96-8p.  *Id.*  On remand from the Appeals Council, the ALJ again found a severe mental impairment but made a finding of not disabled.  R. at 528.  The Appeals Council reversed again, finding that the RFC still did not "adequately account for the limitations imposed by the claimant's mental impairments."  R. at 539-40.  It noted that, although the ALJ found that the mental impairments "caused moderate difficulties in concentration, persistence, or pace," the limitation to "simple, rote, repetitive tasks" still did not "reflect a function-by-function analysis of an individual's capabilities."  R. at 540.

On July 30, 2018, the ALJ issued another decision finding that plaintiff is not disabled.  R. at 364, 384.  The ALJ found that plaintiff had not engaged in substantial gainful activity since the disability onset date and had the following severe impairments: headaches following a history of left thalamic infarct, COPD/asthma, and obesity.  R. at 370.  The ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, or 416.926.  R. at 374.  Ultimately, the ALJ concluded that plaintiff had the residual functional capacity ("RFC") to perform light work with the following qualifications:

> [she] can only frequently squat and kneel; must have minimal exposure to dust, smoke and chemicals; cannot perform work involving complex tasks, defined as simple, rote, repetitive tasks; can maintain attention to tasks for two-hour periods, then requires a 10-minute break before returning to tasks; can appropriate interact with the general public, co-workers and supervisors during the entire workday.

*Id*.  The ALJ determined that plaintiff was unable to perform any past relevant work, but found that other jobs existed in significant numbers in the national economy that plaintiff could perform.  R. at 382-84.

On August 16, 2019, the Appeals Council denied plaintiff's request for review.  R. at 349.  Accordingly, the ALJ's decision became the final decision of the Commissioner.  *Id.*

## II. STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "Substantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (citation and quotation omitted).  "The threshold for such evidentiary sufficiency is not high."  *Id.*  Nevertheless, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."

*Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(1)-(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5)

whether the impairment precludes the claimant from doing any work. *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV. DISCUSSION

Plaintiff raises three objections to the ALJ's decision: (1) the ALJ's conclusion that plaintiff did not have a medically determinable cognitive impairment is incorrect; (2) the ALJ's limitation to simple, rote, and repetitive tasks did not adequately respond to plaintiff's headaches; and (3) there is no basis for the ALJ's RFC determination as it relates to plaintiff's headaches. *See* Docket No. 13 at 4. The Court addresses each in turn.

### A. Departure from Previous Decisions

Plaintiff argues that the ALJ did not have "good reasons" for concluding that plaintiff did not have a medically determinable cognitive impairment. *See id.* at 13. Specifically, plaintiff contends, because previous ALJ decisions had found that plaintiff did have a cognitive impairment, and the Appeals Council "at least implicitly acknowledged the existence of a severe cognitive disorder," the ALJ "should be required to express very good reasons for deviating from prior case history." *Id.* at 13-16. The Court is not persuaded.

First, as plaintiff notes, *id.* at 16, an ALJ is permitted to change his or her findings after remand. *See Miller v. Barnhart*, 175 F. App'x 952, 955-56 (10th Cir. 2006) (unpublished) ("Preclusion principles . . . do not bind the ALJ to his earlier decision."); *Campbell v. Bowen*, 822 F.3d 1518, 1522 (10th Cir. 1987) (reasoning that binding an ALJ to previous decisions "would discourage administrative law judges from reviewing the record on remand, checking initial findings of fact, and making corrections, if appropriate"). An ALJ, however, is required to comply with "any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b). While an ALJ will be found to be in compliance with a remand order if the Appeals Council specifically says so, *see Miller*, 175 F. App'x at 956, a court should otherwise determine whether the ALJ complied with the Appeals Council's remand order.[2] *See Noreja v. Comm'r, SSA*, 952

---

[2] Plaintiff does not argue that the ALJ failed to comply with any Appeals Council order directing him to make a finding of a severe mental impairment, only that the Appeals Council "implicitly" agreed that plaintiff had such an impairment. Docket No. 13 at 15.

F.3d 1172, 1880-81 (10th Cir. 2020). "The language in the Appeals Council's order is significant." *Id.* at 1181.

Although plaintiff agrees that an ALJ is permitted to change his or her opinion on remand, she contends that the ALJ "should have explained why" the medical determinability of plaintiff's cognitive impairment changed from the previous order. Docket No. 13 at 16. Plaintiff cites *Hamlin v. Barnhart*, 365 F.3d 1208 (10th Cir. 2004), to support her argument that the ALJ had to specifically explain his departure from his previous decision. *See* Docket No. 13 at 16. In *Hamlin*, the Tenth Circuit stated that, after the same ALJ reviewed the claimant's record in two separate decisions, he came to two different conclusions regarding the claimant's RFC even though the two decisions "used almost exactly the same language and relied on nearly the same evidence . . . but provided no explanation for why the same evidence would result in a different conclusion." *See* 365 F.3d at 1223-24. Defendant argues that *Hamlin* is inapposite because the "ALJ in this case provided a detailed discussion of the evidence that he relied on to find plaintiff had no cognitive impairment." Docket No. 17 at 9.

The Court finds that *Hamlin* is inapposite. Although the same ALJ wrote the 2015 and the 2018 decision, *see* R. at 528 (William Musseman); R at 384 (same), the analysis is substantially different. The Court analyzes each decision in turn.

The 2015 decision first reviewed a hospital visit from 2009 that resulted from an "acute thalamic infarct." R. at 507. The ALJ noted that, although plaintiff suffered a severe headache and was prescribed medication, she was "non-compliant" with her treatment or medication. *Id.* Plaintiff also did not have "any regular treatment to

monitor the infarct, and has made only intermittent complaints of any ongoing headaches." *Id.*  Next, the ALJ considered a 2009 consultative, psychological evaluation from Brett Valette.  *Id.*  But the ALJ noted that Dr. Valette himself "questioned the validity of the scores," that plaintiff reported to Dr. Valette independent activities of daily living, and that plaintiff did not seek specific treatment, a neurologist, or therapy.  R. at 507-08.  The ALJ also analyzed a psychological evaluation conducted by an examining psychologist, Dr. Carlos Rodriguez.  R. at 508.  The ALJ noted that Dr. Rodriguez primarily relied on the 2009 report of Dr. Valette as well as the subjective reporting of plaintiff.  R. at 509.  Dr. Rodriguez did not perform any intelligence testing or specialized neurocognitive testing, but nonetheless diagnosed plaintiff with "rule out" diagnoses of borderline intellectual functioning and unspecified neurocognitive disorder.  *Id.*  Yet, the ALJ noted that the objective medical evidence showed plaintiff had "normal memory."  *Id.*  Given his reliance on subjective reporting, the failure to conduct any independent testing, and his reliance on a 2009 report of which Dr. Valette questioned the validity, the ALJ gave "no weight" to Dr. Rodriguez's diagnoses and report.  *Id.*  Based on this evidence, the ALJ found plaintiff to have a severe impairment of "headaches with cognitive disorder, not otherwise specified, following a history of left thalamic infarct."  R. at 507.

For the 2018 decision, although much of the evidence is the same, the ALJ's analysis is different.  The ALJ again gave Dr. Rodriguez's opinion no weight.  R. at 372.  As to Dr. Valette, the ALJ gave his opinion little weight because Dr. Valette (1) stated that the scores should be interpreted with caution, (2) plaintiff gave little effort in the exam, and (3) longitudinal studies contradicted the one-day report of Dr. Valette.  R. at

373 ("GAF scores represent only the perceived functioning of an individual based on a single presentation on a single day . . . . GAF scores are highly subjective and do not accurately reflect the objective findings of the record."). The ALJ also noted that the most recent edition of the Diagnostic and Statistic Manual of Mental Disorders "does away with the GAF score, suggesting it is not a reliable indicator of an individual's function." *Id.* In addition to the two opinions of Dr. Rodriguez and Dr. Valette, which were discussed in the 2015 decision, the ALJ also discussed the opinions and reports of two others, State Agency Psychological Consultant Mark Suyeishi and physician's assistant Ginger Todd. R. at 371-72. Given the additional analysis present as to Dr. Rodriguez and Dr. Valette, and the new discussion as to Dr. Suyeishi and Ms. Todd, plaintiff's argument that the ALJ's decision is identical is inaccurate.

Plaintiff also contends that the Appeals Council "told the ALJ to retain a medical expert if necessary," and the ALJ did not retain any new experts. Docket No. 13 at 7. "The language in the Appeals Council's order is significant," *Noreja*, 952 F.3d at 1181, and the Appeals Council stated that the ALJ was to obtain a medical expert "if necessary" to discuss the "nature and severity of and functional limitations resulting from the claimant's mental impairments." R. at 540. Thus, the Appeals Council did not require the ALJ to obtain a medical expert; one was only required if it was necessary to discuss functional limitations resulting from mental impairments. *Id.* Plaintiff does not explain why a medical expert was necessary here and, given that the ALJ found plaintiff to not have any mental impairments, it is unclear why it would be necessary to obtain such an expert to discuss limitations for a mental impairment that the ALJ found did not exist.

## B.  RFC and Headaches

Plaintiff's second and third objections, that the ALJ's limitation to simple, rote, and repetitive tasks did not adequately respond to plaintiff's headaches and there is no basis for the ALJ's RFC determination as it relates to plaintiff's headaches, both go to the substantial evidence to support the ALJ's RFC determination as it relates to plaintiff's headaches.  As a result, the Court addresses them together.  The Court finds that the RFC determination as to plaintiff's headaches is supported by substantial evidence.

Plaintiff contends that the ALJ failed to implement the Appeals Council's command that the ALJ provide a function-by-function assessment for plaintiff's headaches.  Docket No. 13 at 17.  Specifically, plaintiff suggests that, because limitation to "simple, rote, and repetitive tasks was not adequate to account for the combined" limitation, it cannot be sufficient for the headache-only limitation.  *Id.* at 17-18 (emphasis omitted).  Plaintiff both misunderstands what the Appeals Council required and what the ALJ determined.

In the 2015 decision, the ALJ found that plaintiff's mental impairments caused moderate difficulties in concentration, persistence, or pace.  R. at 514.  Then, the ALJ limited plaintiff to "no complex tasks" or only "simple, rote, repetitive" tasks.  R. at 515.  The Appeals Council noted that this did not reflect a function-by-function analysis or account for plaintiff's "limitation in concentration, persistence, or pace."  R. at 540.  Critically, "[f]or cases involving a *severe mental impairment*, the decision must indicate whether an individual can perform the work-related mental activities generally required," such as understanding, carrying out, and remembering decisions, having proper

judgment, and responding appropriately to work situations. *Id.* Thus, the Appeals Council did not state that a "simple, rote, repetitive" RFC was automatically inappropriate. Rather, when an ALJ finds a severe mental impairment that results in limitations in concentration, persistence, or pace, the ALJ must then account for those specific impairments in a function-by-function analysis, for example, understanding and proper judgment.

Here, however, the ALJ specifically found that plaintiff did not have a severe mental impairment, for all the reasons already discussed. R. at 371. The ALJ also analyzed the specific areas mentioned by the Appeals Council, such as pace, concentration, carrying out instructions, and so on. R. at 372. The ALJ found that the evidence does not establish plaintiff having any impairment as to (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, or (4) adapting or managing oneself. *Id.* Thus, because the ALJ did not find a severe mental impairment, or any limitations regarding concentration, persistence, or pace, there is no support for plaintiff's argument that, because simple, repetitive, and rote tasks were insufficient for the severe mental impairment of cognitive disorder and headaches, they are also insufficient for headaches. Indeed, the ALJ concluded that there is "very weak medical evidence" overall to suggest any limitations presented by plaintiff's headaches. R. at 377.

As to the ALJ's limitation to simple tasks, two hour periods, and ten minute breaks, plaintiff argues that, because the ALJ rejected the "only source" that address headache limitations, the ALJ's limitations are not supported by substantial evidence. Docket No. 13 at 22-23. In reaching the RFC determination, the ALJ noted that plaintiff

had "pervasive non-compliance" with taking headache medication or "receiving follow-up care." R at 376. One provider could not determine whether plaintiff was in actual pain. *Id.* And the "longitudinal treatment record simply does not reflect any neurological deficits." *Id.* Ultimately, the ALJ determined that, despite the complete lack of objective medical evidence demonstrating that plaintiff's headaches had any functional limitations, the ALJ, "in an abundance of caution," provided limitations in plaintiff's RFC. R. at 377.

Plaintiff argues that there "is simply no obvious evidence from which the ALJ could have derived the headache restrictions." Docket No. 13 at 25. But that is precisely what the ALJ determined: no objective medical evidence supported *any* restrictions on plaintiff's ability to work based on her subjective reporting of headaches. R. at 377. Plaintiff herself admits that there is no evidence regarding any headache limitations besides Ms. Todd, but does not argue that it was inappropriate to give Ms. Todd's opinion little weight given that she was not a medical source, other than to say it was "uncontroverted." *See* Docket No. 13 at 23. Plaintiff provides no support for her proposition that, when an ALJ determines that there is no objective medical evidence in the record to support a functional limitation – and when the claimant agrees with that conclusion – it is nonetheless reversible error to add a limitation "in an abundance of caution." R. at 377. To the contrary, the Tenth Circuit has stated there is "no controlling authority holding that the full adverse force of a medical opinion cannot be moderated favorably . . . unless the ALJ provides an explanation for extending the claimant such a benefit." *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Rather, "if a medical opinion adverse to the claimant has properly been given

12

substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefits." *Id.* Here, even though the objective medical evidence – which plaintiff does not contest – did not show any functional limitations, the ALJ provided limitations anyways. Such "temper[ing]" of extremes is permitted. *Id.*

## V. CONCLUSION

For these reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff is not disabled is **AFFIRMED**. It is further

**ORDERED** that this case is closed.

DATED March 29, 2021.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge